UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00165-HBB

DANA M. BROWN                                                                               PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Dana M. Brown ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered January 9, 2020 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On October 15, 2015, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 15, 249-50, 251-52, 253-63). Plaintiff alleged that she became disabled on December 20, 2012 as a result of spina bifida (chiari malformation type 1), compression of brain, thoracic or lumbosacral or radiculitis, and lumbar spondylosis (Tr. 15, 284). Administrative Law Judge Steven Collins ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 15, 32-34). Plaintiff and her counsel, Andrew Gregory-Mabrey, participated from Bowling Green, Kentucky (Id.). William R. Harpool, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated September 6, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-24). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date (Tr. 17). At the second step, the ALJ determined that Plaintiff has the following severe impairments: lumbar and cervical spondylosis, migraine headaches, vertigo, history of Chiari malformation, fibromyalgia, obesity, diplopia, and diabetes mellitus (Id.). The ALJ also determined that Plaintiff's hypertension, venous insufficiency of both lower extremities, and anxiety are "non-severe" impairments within the meaning of the regulations (Tr. 18).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19). The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a range of sedentary work because she is limited to occasional climbing of ramps and

stairs, balancing, stooping, kneeling, crouching, and crawling; she is limited to no climbing of ladders, ropes, or scaffolding; she can perform occasional overhead reaching with the bilateral upper extremity; she must avoid concentrated exposure to extreme cold, extreme heat, and wetness; she must avoid vibration and workplace hazards; and the work must not require fine or near vision such as threading a needle or reading small print (Tr. 19).

At the fourth step, the ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of her past relevant work (Tr. 23).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24). The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 1, 2015 through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 247-48). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 5

1. Arguments of the Parties

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination that she is limited to a range of sedentary work (DN 13 PageID # 1199-1203). Plaintiff indicates the only medical opinions of record addressing her physical limitations are those of the non-examining state agency medical consultants Drs. Blumenfeld and Brown, dated December 2, 2015

and March 31, 2016 (Id.). Plaintiff contends these opinions limiting her to a range of light work are outdated because Drs. Blumenfeld and Brown did not have the opportunity to review most of the medical evidence in the record (Id.).[1] Plaintiff asserts that Exhibits 10F through 37F where not part of the record when Dr. Brown expressed his medical opinion regarding Plaintiff's functional limitations (Id.). Plaintiff indicates that when the ALJ recognized the subsequently received medical evidence indicated more significant limitations than those expressed by Drs. Blumenfeld and Brown, the ALJ should have obtained an up to date medical opinion from a consultative medical examiner or a testifying medical expert instead of assigning physical functional limitations based on the ALJ's own review of the medical evidence[2] (Id. citing Rudd v. Comm'r, 531 F. App'x 719, 726 (6th Cir. 2013) (ALJ "not qualified to interpret raw medical data in functional terms"); Childress v. Comm'r, No. 1:16-CV-00119-HBB, 2017 WL 758941, at *4 (W.D. Ky. Feb. 27, 2017) ("While the [ALJ] has discretion whether to order a consultative examination, or to call a medical expert at the hearing . . ., the [ALJ's RFC] finding must be supported by substantial evidence in the administrative record."); Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008)).

Plaintiff also asserts that the ALJ failed to give appropriate consideration to the opinions of Tammy H. Love, OD, and Dr. Abram addressing Plaintiff's horizontal double vision (DN 13

---

[1] Plaintiff claims, for example, that Exhibits 10F through 37F were not in the record when Dr. Brown expressed his medical opinion (DN 13 PageID # 1199-1203).

[2] Plaintiff cites the cervical MRI of March 17, 2017 and treatment records concerning her double vision as evidence the ALJ was not qualified to interpret in functional terms (Id. citing Tr. 950-51, 984, 997, 987-992, 999-1000).

PageID # 1202-03 citing Tr. 984, 997, 983, 985).[3] Further, Plaintiff claims the ALJ failed to address her obesity as indicated in Social Security Ruling 19-2p (DN 13 PageID # 1203).

Defendant asserts that the ALJ reasonably considered the medical evidence and medical opinions in the record and determined that Plaintiff could perform a reduced range of sedentary work that did not "require fine or near vision such as threading a needle or reading small print" (DN 19 PageID # 1223-29 citing Tr. 19). Defendant contends the ALJ was not required to obtain an updated medical opinion before making his RFC determination (Id. citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (the Administrative Law Judge has final responsibility for determining an individual's RFC)). Defendant points out that Plaintiff complained of double vision after Drs. Blumenfeld and Brown issued their opinions, and that the ALJ considered the limited medical evidence in the record regarding this symptom, as well as Plaintiff's testimony, and reasonably concluded that Plaintiff could perform work that did not require fine or near vision (Id. citing Tr. 987-89, 990-92, 998-1000).[4] Defendant argues that the ALJ considered the opinions from Drs. Love and Abram and provided appropriate reasons why they were not entitled to significant weight (Id.). Defendant contends that Plaintiff's obesity argument should be deemed waived because it is undeveloped (Id.). Defendant notes that Plaintiff fails to identify any specific physical limitations caused by her obesity that should have been included in the RFC (Id.).

---

3 Plaintiff also argues the ALJ failed to ask the vocational expert whether the identified jobs can be performed if the worker has horizontal double vision (DN 13 PageID # 1202-03).

4 Defendant notes that Plaintiff failed to cross-examine the vocational expert about the impact her double vision would have on the identified jobs (DN 19 PageID # 1223-29).

2. Discussion

A claimant bears the burden of proof as to the existence and severity of the limitations caused by her physical and mental impairments. Cruse v. Comm'r Soc. Sec., 502 F.3d 532, 545 (6th Cir. 2007). But before making a disability determination, an Administrative Law Judge has the responsibility to develop the administrative record. 20 C.F.R. §§ 404.1512(b), 404.1545(a)(3), 416.912(b), 416.945 (a)(3). While an Administrative Law Judge has discretion whether to order a consultative examination, or to call a medical expert at the hearing, Deskin, 605 F. Supp. 2d at 911 (citations omitted), the Administrative Law Judge's residual functional capacity finding must be supported by "substantial evidence" in the administrative record. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). Critical to the RFC finding are medical opinions regarding functional limitations caused by the claimant's physical or mental impairments. 20 C.F.R. §§ 404.1513(a), 404.1513a, 404.1527, 404.1529, 404.1545(a), 404.1546, 416.913(a), 416.913a, 416.927, 416.929, 416.945(a), 416.946. Medical opinions can be generated by treating physicians, consultative examining physicians, state agency physicians who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1545(a)(3), 416.902, 416.913(a)(2), 416.945(a)(3).

In a limited number of instances, where the medical evidence shows comparatively little physical impairment, an Administrative Law Judge may be able to make a commonsense

determination about a claimant's residual functional capacity. *See* Bryant v. Comm'r of Soc. Sec., No. 3:15-CV-354, 2017 WL 489746, at *4 (S.D. Ohio Feb. 7, 2017); Deskin, 605 F. Supp. 2d at 912-13. But the general rule is that Administrative Law Judges are simply not qualified to assess a claimant's residual functional capacity based on raw medical findings that merely diagnose or are used to diagnose a medical condition. *See* Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functioning terms and no medical opinion supported the determination."); Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 292 (1st Cir. 1986) (Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a)... [the Commissioner may not] make that connection himself."); Isaacs v. Comm'r of Soc. Sec., No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms."); Deskin, 605 F. Supp. 2d at 912-13 (Generally, when the record contains only diagnostic evidence a medical opinion must be obtained before the Administrative Law Judge may make residual functional capacity findings.); Rohrberg v. Apfel, 26 F. Supp.2d 303, 311-12 (D. Mass. 1998) (the ALJ impermissibly relied on bare medical evidence to determine the claimant's residual functional capacity). Thus, where an Administrative Law Judge proceeds to make a residual functional capacity assessment without the benefit of a medical source statement, or, with a medical source statement made without the benefit of a review of a substantial part of the claimant's medical records, there exists cause for concern that substantial evidence may not support the residual

9

functional capacity findings. See Bryant, 2017 WL 489746, at *4; Deskin, 605 F. Supp. 2d at 911-12.

Here, the non-examining state agency medical consultants, Drs. Blumenfeld and Brown, reviewed the record and rendered their medical opinions addressing Plaintiff's physical limitations on December 2, 2015 and March 31, 2016 (Tr. 71-81, 82-92, 97-110, 111-124). Essentially, they both concluded that Plaintiff can perform a range of light work, but Dr. Brown included a more specific limitation as to overhead reaching and added environmental restrictions (Id.). Both opinions addressed limitations imposed by Plaintiff's spine but did not impose any visual limitations because Plaintiff began experiencing her double vision months later.

A total of 27 medical exhibits were added to the record during the nearly two and one-half years that separate Dr. Brown's medical opinion from the ALJ's decision dated September 6, 2018 (See Exhibits 10F through 37F). Included within those 27 medical exhibits are the results of two bilateral L3 to L5 diagnostic medial branch blocks (Tr. 829-30, 836, 882); a bilateral L3 to L5 medial branch radiofrequency ablation (Tr. 834-35); a November 2016 MRI of the brain (Tr. 866); a February 2016 MRI of the thoracic spine (Tr. 867); a February 2016 MRI of the cervical spine (Tr. 867); a February 2016 x-ray of the cervical spine (Tr. 876); an April 2016 interspinous ligament injection at the T11-T12 level (Tr. 882); a November 2016 MRI of the brain (Tr. 885, 891); a March 3, 2017 CT scans of the cervical spine and skull (Tr. 934, 938-41); a March 17, 2017 CT angiogram of the head (Tr. 949, 980); a March 17, 2017 CT scan of the cervical spine (Tr. 949-51, 980-81); a March 17, 2017 MRI of the cervical spine (Tr. 981-82); a June 3, 2017 MRI of the brain (Tr. 1011, 1029); a May 16, 2017 electroencephalogram (Tr. 1030); and tens of pages of hospital and treatment records addressing the results of physical examinations, physical

therapy, and treatment related to Plaintiff's thoracic and cervical spine and her history of Chiari malformation of the skull (status post decompression surgery 2012).[5] There are no medical opinions in the record interpreting this raw medical data in functioning terms.

Also included within the 27 medical exhibits are records related to Plaintiff's double vision including a December 20, 2016 examination record prepared by the treating optometrist Tammy H. Love, O.D. (Tr. 987-89); the March 3, 2017 Greenview Hospital records related to double vision and dizziness causing problems with walking (Tr. 929-41); a July 25, 2017 examination record prepared by Dr. Love (Tr. 990-992); the August 4, 2017 neuro-ophthalmology consult examination record prepared by Dr. Reid Longmuir (Tr. 998-1000, 1059-61); a May 16, 2017 electroencephalogram (Tr. 1030); a February 13, 2018 examination record prepared by Dr. Love (Tr. 1124-26); some of the CT scans and MRIs of Plaintiff's brain mentioned above (*see* Tr. 885, 891, 934, 938-41, 949, 980, 1011, 1029). The record does contain a May 23, 2017 opinion from the treating neurosurgeon Dr. Abram (Tr. 983, 985) and a June 15, 2017 opinion from Dr. Love (Tr. 984, 997). But neither opinion interprets this raw medical data in functioning terms. Rather, Dr. Abram indicates Plaintiff "is unable to work at this time due to her having double vision and falling" (Tr. 983, 985); and Dr. Love opines that due to a worsening of Plaintiff's double vision she is unable to work at her job as a nurse (Tr. 984, 997). These opinions are vocational in nature

---

5 Included within the 27 medical exhibits are also an MRI of the right lower leg (Tr. 843-45, 919), an ultrasound of the right lower extremity (Tr. 846-48, 916); a February 27, 2018 ultrasound of the right lower extremity (Tr. 1143-44); and numerous pages of hospital and treatment records addressing Plaintiff's vascular pain in the right leg. Further, there are also an August 2015 and September 2015 CT scans of the pelvis (Tr. 909, 912); an August 16, 2017 CT scans of the pelvis with contrast and without contrast (Tr. 1031-33, 1040-41, 1104, 1106); a November 12, 2017 CT scan of the pelvis (Tr. 1069, 1079-80); and several pages of hospital and treatment records addressing Plaintiff's abdominal pain. There are no medical opinions in the record interpreting this raw medical data in functioning terms.

as they address whether Plaintiff can work, which is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). In sum, there are no medical opinions in the record interpreting this raw medical data in functioning terms.

The ALJ fleetingly discussed the MRIs, CT scans, and other test results received after Dr. Brown rendered his opinion (Tr. 19-23). Further, the ALJ attempted to downplay these objective test results by using other evidence in the record (Id.).

The ALJ gave **some weight** to the medical opinions of Drs. Blumenfeld and Brown because he considered their opinions optimistic in view of the subsequently received medical evidence (Tr. 19-21, 22-23).[6] The ALJ assigned **little weight** to Dr. Abram's opinion and **some weight** to Dr. Love's opinion despite their being vocational in nature and addressing an issue reserved to the Commissioner (Tr. 22).[7] Thus, the ALJ made an RFC determination without any medical source

---

6 In pertinent part, ALJ's decision reads:

> The undersigned has considered the opinions of the State Agency medical consultants who provided physical residual functional capacity assessments. These opinions have been accorded **some weight**, with some additional limitation, as they support the ultimate finding of" not disabled" in this case and the findings in these opinions are consistent with the limited, but effective, conservative treatment history of the claimant. Additionally, there have been no medical source statements, which give an opinion as to the claimant's physical and mental limitations. Based on the experience of the State Agency consultants in their medical fields, the undersigned has provided these opinions **significant weight**, as they are consistent with the evidence of record and have considered the claimant's impairments and their effect on her physical functioning. The undersigned agrees with the assessment that the claimant does not have a severe mental health impairment. (Exhs 7A and 8A)

(Tr. 22). The Court agrees that the paragraph as written is confusing. The second part of the paragraph appears to address an opinion that the non-examing state agency psychological consultant, H. Thompson Prout, Ph.D., prepared on March 31, 2016 (Tr. 18, 22, 103-04, 117-18).

7 Regarding Dr. Abram's opinion, the ALJ explained there was little, if any, evidence regarding Plaintiff falling because of her double vision, her intermittent double vision has been treated conservatively with special correction lenses, and she continues to drive on an infrequent basis (Tr. 22). Regarding Dr. Love's opinion, the ALJ found it consistent with her ability to perform work as a nurse but it failed to address her ability to do other less physically

statement in the record addressing the raw medical data from MRIs, CT scans, EMGs, and such. Judge Posner of the Seventh Circuit has warned that Administrative Law Judges "must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) (citations omitted). Moreover, other courts have held that Administrative Law Judges should not have relied on their own interpretation of MRI results when formulating a claimant's residual functional capacity. *See e.g.*, Bryant, 2017 WL 489746, at *4 (Administrative Law Judge impermissibly relied on his own interpretation of the MRI results when formulating the claimant's residual functional capacity); Deskin, 605 F. Supp. 2d at 913 (the Administrative Law Judge should have obtained a medical opinion translating the raw medical data in the MRI findings into functional limitations). Additionally, there is no medical opinion in the record substantiating the ALJ's findings regarding the functional limitations imposed by Plaintiff's double vision. Therefore, the physical limitations set forth within ALJ's residual functional capacity which are clearly based on a lay person's intuition, as opposed to a medical opinion, are not supported by substantial evidence in the record. Accordingly, the case must be reversed and remanded to the Commissioner, under sentence four of 42 U.S.C. § 405(g).

       The undersigned is aware that Plaintiff has raised other claims regarding the ALJ's residual functional capacity findings. Considering the above conclusion, the undersigned deems it

---

demanding work (Id.).

unnecessary to address those other claims. Further, the ALJ will have the opportunity to remedy those issues when he conducts additional proceedings to remedy the above identified defect in the original proceedings.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

August 27, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel